15098

McLEOD v. ATLANTIC COAST LINE R. CO.

(9 S. E. (2d), 210)

*Mr. L. D. Jennings,* for appellant,

*Messrs. Douglas McKay* and *Reynolds & Reynolds,* for respondent,

June 5, 1940.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE BONHAM.

This action is brought to recover for damages alleged to
have been done to plaintiff's land by fire communicated by
a locomotive engine of the defendant to the right-of-way
of the defendant and which spread from the right-of-way
to the lands of Roney Poole, which lay between defendant's
right-of-way and plaintiff's lands, and thence spread to the
lands of plaintiff.

The case came on for trial before Judge Mann and a jury
in the Court of Common Pleas for Sumter County. At the
conclusion of the testimony for the plaintiff, the defendant
made a motion for nonsuit "on the ground that there is no
testimony to substantiate the allegations of the complaint;
that is, no inference to be drawn from the testimony on be-
half of the plaintiff, that this fire was communicated by the
locomotive of the defendant." The motion was granted.

Plaintiff appeals on exceptions which he states in his
brief involve but one question. Was his Honor in error in
granting the motion for nonsuit on the ground that there
was no testimony from which it could be inferred that the
fire was communicated to defendant's right-of-way by de-
fendant's locomotive and thence spread to plaintiff's land?

The main witness for plaintiff was M. C. McLeod, the
husband of plaintiff. An analysis of his testimony discloses
that: His house is a quarter of a mile from the railroad; the
Roney Poole land is between the railroad and the plaintiff's
land. The day of the fire he was in front of his house talk-
ing with Donnie Geddings, who is sick and unable to come
to Court. Witness was facing toward the railroad just be-
fore the train passed; he looked toward the railroad, there
was no fire; he is satisfied he would have seen a fire had it
been there. The train passed some time about twelve o'clock,
as far as he recalls, going north toward Sumter. It was a
freight train; he was standing there as it passed. After the
train passed, he noticed smoke in about five minutes. Smoke
was on Poole's land near the railroad. When we went down

to the railroad tracks we saw this fire. It started right next to this track, about thirty-six feet from the railroad track in a little corn field, he measured it. It was right even with the telegraph poles, about six feet beyond the poles, on the other side of the railroad.

"Q. Well, where you first saw it was it on the railroad right-of-way or do you know? A. Well, it had burned beyónd the railroad.

"Q. Well, was part of the railroad right-of-way burned off? A. Yes."

Witness was on the east side of the railroad. The wind. was blowing from the west, a mighty high wind. When he got there it had burned about a hundred yards from the railroad. It was a good big fire burning over an acre wide. There was in witness' woods a lot of broom sage, fine straw and dead pine tops where he had some pulpwood cut.

On cross examination, he said this land had not been burned over for four or five years; he saw the train coming; it was a pretty good freight train; it had passed about five minutes when he saw the smoke about a quarter of a mile away; it was a big smoke.

"Q. Well, it takes some time for a spark to create a big smoke, doesn't it? A. Well, not such a long time on a windy day in broom sage."

The wind was from the west, going to the east. The right-of-way along there is sixty-five feet on either side of the track. The right-of-way was clear all except the corn field.

"Q. I am asking you about the right-of-way, and you can except the corn field, it was burned clean? A. Yes, except the cornfield on this turn row, where this fellow would turn around, it was pretty heavy grass."

There is a neighborhood road which parallels this track.

"Q. Well, wasn't it on this road it started and burned toward the railroad and the other way, too? A. No, sir, it couldn't burn against the wind.

"Q. Well, you were not there? A. Yes, sir, I was there in less than ten minutes.  *  *.  *

"Q. If someone had come along there and thrown a match or cigarette in the grass it would have started it? A. Yes, sir.

"Q. And you have no way of knowing whether it was started that way or not? A. I think the train threw that fire out.

"Q. But you have no knowledge as to whether the train did it or someone walking there on that road, or in a buggy? A. Well, I didn't see anyone walking or in a buggy.

"Q. Well, you couldn't have seen it? A. No, sir.

"Q. And this is your supposition? A. I am most satisfied that the train threw the fire.

"Q. Well, you didn't see it throw the fire? A. No, sir."

In his order granting the motion for nonsuit in the present case, the trial Judge commented on the case of *Epps v. Atlantic Coast Line Railroad Company,* 177 S. C., 32, 180 S. E., 559, 560, and held that the facts in the present case did not, as it did in that case, justify the inference that the fire was communicated by a locomotive engine to the right-of-way of the railroad and thence to plaintiff's land.

In the *Epps case, supra,* the only question presented for the consideration of this Court on appeal was whether there was sufficient evidence to warrant submitting the case to the jury. That is the sole issue in this case. A synopsis of the testimony in the *Epps case* discloses that a short community road runs parallel to the railroad track; on this road there is a ditch and the fire originated between the ditch and the road, in some dead grass, and swept on under a high wind until it reached plaintiff's land; that there had been no rain for a long time; that the wind was blowing from the railroad track toward plaintiff's property; that the railroad train passed over the place where the fire originated between twelve and one o'clock; was a long train, and running pretty fast. David Fulmore testified that he did not see any one at all traveling along the dirt road that morning, and there was no other fire in the community that day; that the fire started right in the road; you could see where the spark hit the

road. James Holmes stated that he was about 300 yards west of the railroad; had an unobstructed view of the road; just as the train passed he saw smoke on the opposite side of the road from him. On cross examination he said when he first saw it (the smoke) "it was just a puff of smoke, and when I carried the cow off it was blazing up." When he first saw the fire the train had got about half mile away. H. H. Sauls testified that he saw the southbound freight train pass about noon, and saw the smoke right after the train passed.

Mr. Justice Fishburne, for the Court, said: "The foregoing testimony was sufficient to take the case to the jury."

We think the similarity in the facts of these two cases justifies the same finding; that the testimony in this case justifies the same conclusion, this testimony is sufficient to take the case to the jury.

Respondent relies upon and quotes from the case of *Blakely v. Atlantic C. L. R. R. Co.*, 172 S. C., 343, 174 S. E., 15, 16, as follows: "In suits under this statute no presumption will arise that a locomotive caused the fire simply because a locomotive was in the vicinity shortly before the fire was discovered. There must be proof of some act upon which the presumption can be based. * * * "

It is sufficient to say that the case under review does not depend on any unsupported presumption.

Respondent relies upon the case of *Bankers' & Shippers' Insurance Company v. Charleston & W. C. R. R. Company*, 138 S. C., 339, 341, 136 S. E., 557, 558. The opinion in that case states this: "The plaintiff depended upon the following circumstances as sufficient evidence to carry the case to the jury: That the cotton was within the right-of-way, and that within a few hours prior to the discovery of the fire one or two trains of the defendant had passed through Switzer. There was no evidence that either of the engines attached to the trains emitted sparks. To the contrary, plaintiff's own witnesses, who saw one of the trains go by, testified that there was no emission of sparks. There

was no evidence that prior to the occurrence the engines of the defendant had been throwing out sparks."

We do not understand that that case can be held as authority for the position that the only way to prove that a locomotive engine has communicated a fire is to prove that it was seen to emit sparks. It will hardly be argued that every spark which is emitted from a locomotive engine is, or can be, seen. "By their works you shall know them."

In the *Epps case, supra,* this Court discussed the *Blakely case, supra,* and said: " * * * no presumption will arise that a locomotive caused a fire simply because the locomotive was in the vicinity shortly before the fire was discovered, and further held that there must be proof of some act upon which the presumption can be based. However, the 'act' above referred to would in this case refer to the ejection of sparks, which may be proved by circumstantial evidence. It seems to be the contention of the defendant that in order to establish its liability in a case arising under this statute, testimony must be submitted from some witness to the effect that he actually saw sparks emitted from the locomotive smokestack, observed their trajectory, watched their descent, and saw fire ignite therefrom. We cannot approve such a rigid and exacting rule of evidence. To do so would in many cases practically nullify the effect of the law. It would take an eagle eye to note the flight of a spark in the daytime."

If immediately after an engine passes a fire is noted in its wake and there is no other agency by which it could have been ignited, it is a legitimate inference that it was originated by the engine.

In the case we have now under consideration, Mr. McLeod testified that within five minutes after the train passed he saw smoke rise in its wake; that within ten minutes he reached the railroad track and saw the fire burning, there was no other fire about; he was a quarter of a mile away from the track when the engine passed. It was midday; if

sparks had been passing from the engine along with smoke, or without smoke, he could not have seen them. He did see smoke and fire immediately following the passing of the train. We think this, with the other testimony, made issues for the jury to determine.

In the case of *Fleming v. Southern Ry. Co.,* 120 S. C., 242, 113 S. E., 73, the Circuit Judge directed a verdict for defendant. The action was for damages to plaintiff's property by fire set by defendant's engine and which originated on defendant's right-of-way. Following is the synopsis of testimony for plaintiff: " * * * The morning of the fire 'I was turning around in yard. I heard train pass.' 'Must have been 10 o'clock train; was running very fast, going north.' 'Shortly after, while I was turning around in yard, saw smoke rise. It got larger and larger.' After train passed saw smoke. 'Not very long. Maybe half an hour. I think it was nearer than that, it may have been a little longer or less. Shortly after that I looked, and seen the smoke rising. Then I looked to see which way the fire was going. I went out from my house near enough to see that the fire was on the other side of the railroad.' Fire on side towards turpentine boxes; fire burning from railroad. * * * Positive 'no fire on my side'; went up to see; fire on right; 'I live on left.' Saw no fire before train passed. Soon after train passed saw smoke rise. 'No, sir; I was not taking any notice about the train, but shortly after I seen the smoke I took notice about the train.' 'I live about half a mile from railroad, maybe between a half and three-quarters.' After train passed before saw smoke, 'about a half an hour; it might have been a little more or a little less. I looked around towards the railroad and saw smoke. I knew, if the fire was coming towards my home, it would burn me out. I walked up and saw the fire was on that side of the railroad, going the other way. It was on the right, and I stays on the left.' 'Last week was the first time Mr. Fleming ever mentioned about fire to me; never told him about the fire. I remember it was on the 12th, because birth was on the 12th, preparing for hot supper. Q.

You say you went up and saw the fire was on the opposite of the railroad from your home? A. Yes, sir. Q. Did you see anything burning by the side of the railroad track, like trash or rubbish? A. Looked like trash or rubbish. Q. You saw that on the right-of-way? A. Yes, sir; going from the right-of-way'."

On appeal from the order directing verdict for defendant, the above testimony was reviewed and the Court said: "This testimony alone, which we have quoted, is susceptible of a reasonable inference in favor of the plaintiff; nor is the result different when it is considered in connection with the other testimony. *Mitchum v. S. A. L. Ry.*, 115 S. C., 500, 106 S. E., 769."

In the *Mitchum case,* there cited, the main opinion said [115 S. C., 500, 106 S. E., 770]: "The testimony was circumstantial, but it tended to sustain the allegations of the complaint. Therefore the issues of fact were properly submitted to the jury."

In the case of *Green Brabham Company v. Atlantic C. L. R. R. Co.,* 87 S. C., 258, 69 S. E., 290, 292, this Court said: "'That an engine was properly equipped and carefully and skillfully managed are facts for the consideration of the jury in determining the question of negligence, when that is an issue, or in determining the question whether it did, in fact, emit sparks upon any occasion, but the court cannot say as a matter of law that evidence of such equipment and management conclusively negatives either proposition; because we know from experience and observation that the most improved and skillfully devised machinery and appliances sometimes fail to perform their functions, and that the most careful persons are sometimes negligent."

In the case of *Brown v. Railway Company,* 64 S. C., 365, 42 S. E., 178, 180, the Supreme Court said: "There was no positive testimony that the fire originated within the limits of the right-of-way of the defendant in consequence of the acts of any of its authorized agents or employes. Nevertheless the nonsuit was not proper if the circumstances

detailed in evidence tended to show that the fire originated as alleged. The testimony showed that an authorized employe of the defendant made a fire in the stove about half past 8 o'clock; that there was a good fire in the stove, and it was red hot when he left, about 11 o'clock; that there was no water in the exhaust pipes, which seem to have been defective; that the stove pipe was so constructed as to make it liable to set the wooden structure on fire; that the stove pipe went through the roof of the building, and there is where the fire was first discovered. These and other circumstances appearing in evidence satisfy us that his Honor the Circuit Judge erred in not submitting the case to the jury."

In the above case, the depot was on the right-of-way, and plaintiff's property which was burned was near it, some five or six feet. The depot caught fire and communicated it to plaintiff's property. There was a nonsuit and, as seen, the order of nonsuit was reversed.

We think that the order of nonsuit in the present case should not have been granted. There was evidence sufficient to take the case to the jury.

Judgment reversed.

MESSRS. JUSTICES BAKER, FISHBURNE, and STUKES, and MR. ACTING ASSOCIATE JUSTICE J. STROM THURMOND concur.